MARY O. WHEDON, Executrix, Respondent, v. LUCY V. S. AMES, Appellant.

St. Louis Court of Appeals, December 20, 1887.

1. TROVER—POSSESSION.—A person who takes possession of his own property which is in the hands of another person, but to the possession of which he is entitled, is not liable therefor in trover.

2. SALES—CHATTELS—CONTRACTS.—A seller can not be bound on an executory contract of sale where the name of the proposed purchaser is not disclosed in the offer to buy.

3. ———— If the name of the proposed purchaser be not disclosed, the seller may defend on the ground that he thought the purchaser was another person whom he was willing to trust.

4. ———— PRACTICE.—It is error to submit the cause to the jury where the plaintiff claims that the sale was absolute and the defendant claims that it was conditional, and where there is no substantial evidence that the minds of the parties met on the proposition that it was absolute.

Appeal from the St. Louis Circuit Court, Amos M. Thayer, Judge.

*Reversed and remanded.*

G. M. Stewart, for the appellant: There was no contract. Mrs. Ames never sold or agreed to sell the furniture to Whedon. She never knew him as a proposed purchaser when the verbal agreement was made to sell to Rea. *Mfg. Co. v. Broderick*, 12 Mo. App. 378 ; *Robinson v. Railroad*, 75 Mo. 494. The subsequent promise to let Whedon have the furniture was coupled with a condition which was never fulfilled. *Falls Wire Co. v. Broderick*, 12 Mo. App. 378 ; *Eads v. Carondelet*, 42 Mo. 117 ; Bishop on Contracts (1 Ed.) sec. 179. It was an error to admit evidence to show that the property sued for was included in the transaction which resulted in the deed to Whedon. The result of the negotiations is evidenced by that deed, and it was improper to admit evidence to show that other property was included in that sale, the consideration for which was named in that deed as the consideration for the land described. *Jones v. Shaw*, 67 Mo. 670 ; *Pearson v. Carson*, 69 Mo. 551 ; *Chrisman v. Hodges*, 75 Mo. 413 ; *Sterling v. Winter*, 80 Mo. 141 ; *Smith v. Shell*, 82 Mo. 215 ; *Lewis v. West*, 23 Mo. App. 503.

Collins & Jamison, for the respondent.

Rombauer, J., delivered the opinion of the court.

The action is trover, brought to recover the sum of six thousand dollars, the alleged value of certain furniture which, it is charged, was the property of the respondent's testator, and which the appellant is said to have wrongfully taken into her possession and converted to her own use.

The answer is a general denial.

The testimony in the case presents the following state of facts :

In 1883, one Wilbur F. Brinck, a real-estate broker in this city, learned that the appellant was contemplating a sale of her house, then her home, No. 1615 Lucas Place, and he called on her for the purpose of securing a trade or exchange of other property for this house. His proposition was to give, in exchange for this house and certain other vacant property which the appellant owned, and which was situated on Washington avenue, an undivided one-third interest in another tract of land. This one-third interest belonged to George H. Rea, now deceased, a man of very considerable wealth. For this one-third interest it was proposed that the appellant make a deed of her house, No. 1615 Lucas Place, and certain other property on Washington avenue, which was unimproved. The appellant owned ninety-nine feet of vacant ground on Washington avenue, and negotiations extended through a period of nearly or quite six months respecting the terms of the proposed trade. Some of the propositions made included the whole ninety-nine feet; others only fifty feet; others embraced all the furniture in the house, No. 1615 Lucas Place, and others only a portion of it. All of these negotiations were had with Mrs. Ames respecting the proposed trade or exchange·of properties with Rea. The result of these negotiations was, that Mrs. Ames should deed her house, No. 1615 Lucas Place, and fifty feet of vacant ground on Washington avenue, to Rea, for a deed from him of an undivided one-third of the Cabanne tract of land, and in addition she was to leave a portion of the furniture in her house—in substance, that portion of it which is set out in the petition.

Some time after these terms were verbally agreed upon, a deed was presented for Mrs. Ames' signature, by the terms of which she was to convey the Lucas Place property to one E. H. Whedon, and receive from him notes secured on the same property for twenty-five thousand dollars, and make a deed of her Washington avenue property to Rea, and from him receive a deed to his interest in the Cabanne tract, and give him a deed

of trust on this interest for twenty-five thousand dollars. These papers were presented to her, at the instance of Brinck, by H. G. Knapp, who was the appellant's agent for certain purposes, as will appear hereafter. An examination of these papers presented to her, for the first time disclosed the name of Whedon in this transaction. He was a stranger to her personally or by reputation, and she refused to make any such trade with him, as she states, for the reason, among others, that she did not wish to sell her house for the notes of a person she did not know, and take the risk of collecting them; and, further, that she had made no bargain to sell this property to Whedon. She retained these papers several days, and, in the meantime, Brinck called on her to urge her to execute them and accept Whedon's notes, secured by deed of trust on the property, and as an inducement for her to do so told her that Samuel Gaty, a wealthy citizen of St. Louis, since deceased, would buy the house and pay cash for it, and in this way Whedon's notes would be cashed at once.

Before Mrs. Ames signed the deed, and at the request of Brinck, Gaty was permitted to visit the house and examine it with a view of making the purchase. Mrs. Ames was, at this time, about to leave the city to visit her son, who was at school in Virginia, and go thence to Europe, and to be rid of the matter she agreed, as she states, that if Whedon's notes were cashed in ten days she would make the deed to him and leave certain furniture in the house, but if they were not cashed within ten days from the delivery of the deed, she would remove the furniture. She then placed the completion of this matter in the hands of Knapp, with directions to remove all the furniture from the house unless the Whedon notes were cashed within ten days, and left the notes and deed of trust with him (Knapp) for this purpose, and also instructed him to take steps to protect her furniture in the meantime, and left the city and was absent several months. She left St. Louis on the tenth or eleventh day of May, 1883. On the

eleventh of May, 1883, Knapp procured the following agreement from Whedon through Brinck:

"St. Louis, May 11, 1883.

"For value received, I hereby agree that Mrs. Ames can retain possession of dwelling, 1615 Lucas Place (for purpose of removing her furniture therefrom) until the first day of June, 1883, or as much sooner as may be.
"E. H. WHEDON."

The notes of Whedon were not cashed within the ten days limited, and Knapp removed all the furniture from the house, No. 1615 Lucas Place, and about two years afterwards, and after the death of Whedon, this action was begun by his executrix.

The deed from Mrs. Ames to Whedon was offered in evidence by the plaintiff and mentions no personal property. The only property conveyed thereby is "a parcel of ground and its premises, situated in block 828, of the city of St. Louis, and designated and described as follows:" describing it by metes and bounds.

It stands conceded that no other written evidence of the sale exists, and that no memorandum showing what furniture, carpets, or gas fixtures were to go with the house, was ever signed either by Mrs. Ames or any one on her behalf.

Brinck, Mrs. Ames, and Scott were examined on behalf of the plaintiff. A careful analysis of their testimony shows that at no time did the minds of the parties meet on any definite proposition. In fact the entire testimony consists more of surmises and suppositions, as to what each party understood the final contract to be, than of proof of an actual contract evidenced by a definite proposal, on the one hand, and its unconditional acceptance, on the other. The conversation between the contracting parties is not stated, nor is its substance given in any case.

At the close of the plaintiff's case the defendant requested an instruction in the nature of a demurrer to the evidence, which the court refused.

The jury found a verdict for the plaintiff in the sum of three thousand dollars, of which amount the plaintiff remitted, on suggestion of the court, eighteen hundred dollars, and judgment was entered in the plaintiff's favor for the residue.

A number of errors are assigned by the defendant appealing. The one mainly relied on is, that, under the uncontroverted evidence, the plaintiff was not entitled to recover, and the court erred in refusing the defendant's instruction to that effect.

What will amount to acceptance of a proposal, and thus constitute a contract between the parties, when the facts are uncontroverted, is a question of law and not of fact. We had occasion to discuss this proposition fully in the case of *Lancaster v. Elliot* ( *ante*, page 86 ). Conceding, therefore, that the deed offered in evidence is not conclusive upon the plaintiff, conceding that she was at liberty to show that it contained only part of the contract, and at liberty to prove the residue of the contract by oral evidence, although it involved the sale of chattels exceeding, on any theory, one thousand dollars in value, and the main objection still remains that the evidence wholly fails to show a definite proposal, on the one hand, and its unconditional acceptance, on the other.

Nor is there substantial evidence of the performance of the contract, as claimed by the plaintiff. The house was delivered, but it is conceded on all hands that the furniture in it was not delivered, because the defendant reserved the right to remove the furniture within a stated time, remaining, in the *interim*, in possession of the house as Whedon's tenant. If the plaintiff rests her case on the defendant's admission, that part of the furniture was delivered with the house, she must take the admission as made, namely, that such delivery was conditional, and that the title never passed to Whedon as the condition was never performed. If the title never passed the removal of the furniture could confer no right of action on the plaintiff, since the right-

ful owner may retake his property at any time, if he can do so peaceably, without subjecting himself to an action for so doing.

It results that the instruction asked by the defendant, at the close of the plaintiff's case, should have been given. For error in refusing it, the judgment must be reversed and the cause remanded. It is so ordered. Judge Lewis concurs; Judge Thompson dissents.